1

2

3

4

5

6

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

7

8

9

10

11

12

| | |
|---|---|
| ROBERT M. REINOSKY, <br><br> Plaintiff, <br><br> v. <br><br> CAROLYN W. COLVIN, Acting Commissioner of Social Security, <br><br> Defendant. | Case No. C14-1467-JCC-BAT <br><br> **REPORT AND RECOMMENDATION** |

13    Robert M. Reinosky seeks review of the denial of his application for Supplemental

14   Security Income.  He contends the ALJ failed to conduct a proper drug addiction or alcoholism

15   (DAA) analysis and failed to properly consider the medical evidence.  Dkt. 14.  For the reasons

16   discussed below, the Court recommends that the Commissioner's decision be **AFFIRMED** and

17   this case be **DISMISSED** with prejudice.

18                                        **BACKGROUND**

19    Mr. Reinosky is currently 52 years old, completed school through the 8th grade, and has

20   worked as a janitor, landscape laborer, ditch digger, furniture mover, and cable puller.  Tr. 34,

21   55, 71-72.  In January 2007, he applied for Supplemental Security Income and Disability

22   Insurance Benefits, alleging disability as of September 30, 2003.  Tr. 19.  After his applications

23   were denied initially and on reconsideration, ALJ R.J. Payne held a hearing and, on November 9,

REPORT AND RECOMMENDATION - 1

2009, issued a decision finding Mr. Reinosky not disabled.  Tr. 153-69.  Mr. Reinosky appealed the decision, and, on January 31, 2011, the Appeals Council granted the request for review, remanding the case to the ALJ for further proceedings.  Tr. 170.

On remand, ALJ Payne held another hearing and, on May 19, 2011, issued a second decision finding Mr. Reinosky not disabled.  Tr. 173-90.  Mr. Reinosky again appealed and, on June 8, 2012, the Appeals Council again granted the request for review and remanded the case to the ALJ for further proceedings.  Tr. 191-95.

On remand for the second time, ALJ Michael Gilbert held another hearing.  Tr. 43-81.  At that hearing, Mr. Reinosky amended his alleged onset date to January 9, 2007.  Tr. 51-52.  Because this date is after his date last insured, Mr. Reinosky thereby dropped his claim for Disability Insurance Benefits.  Tr. 20, 58-89.  On November 5, 2013, ALJ Gilbert issued a third decision finding Mr. Reinosky not disabled.  Tr. 19-36.  The Appeals Council denied Mr. Reinosky's request for review, making ALJ Gilbert's November 2013 decision the Commissioner's final decision.  Tr. 1.

## THE ALJ'S DECISION

Utilizing the five-step disability evaluation process and the drug addiction and alcoholism analysis,[1] the ALJ found:

- Mr. Reinosky had not engaged in substantial gainful activity since the alleged onset date.  Tr. 23.

- Mr. Reinosky had the following severe impairments: polysubstance abuse; mood disorder, substance induced; and adjustment disorder.  *Id.*

- Mr. Reinosky's impairments, including the substance use disorders, met the

---

[1] 20 C.F.R. §§ 416.920, 416.935.

REPORT AND RECOMMENDATION - 2

requirements of listings 12.04 and 12.09.[2]  Tr. 24.

- If Mr. Reinosky stopped the substance use, the remaining limitations would cause more than a minimal impact on his ability to perform work activities; therefore Mr. Reinosky would continue to have a severe impairment or combination of impairments.  Tr. 26.

- If Mr. Reinosky stopped the substance use, his impairments would not meet or equal the requirements of listings 12.04, 12.08, or 12.09.  *Id.*

- If Mr. Reinosky stopped the substance use, he would have the residual functional capacity to perform a full range of work at all exertional levels, but would be limited to simple, routine, and repetitive tasks no greater than reasoning level 2, and could have no interaction with the public and no greater than occasional coworker contact as part of his work duties.  Tr. 28.

- If Mr. Reinosky stopped the substance use, he would be unable to perform his past relevant work, but there would be a significant number of other jobs in the national economy that he could perform.  Tr. 34.

- Mr. Reinosky's substance use disorder is a contributing factor material to the determination of disability because he would not be disabled if he stopped the substance use.  Because the substance use disorder is a contributing factor material to the determination of disability, Mr. Reinosky was not disabled from the time of his alleged onset date through the date of the decision.  Tr. 35.

---

[2] 20 C.F.R. Part 404, Subpart P. Appendix 1.

**DISCUSSION**

**A.      Drug Addiction and Alcoholism Analysis**

Mr. Reinosky argues that the ALJ failed to conduct a proper DAA analysis, focusing on the ALJ's evaluation of the medical evidence regarding his drug and alcohol use.  Dkt. 14 at 6. He argues that the ALJ improperly relied on the medical expert's testimony and erroneously rejected the opinions of the examining doctors.  Dkt. 14 at 7.

If a claimant's DAA is a contributing factor material to the determination of disability, a claimant cannot be considered disabled for purposes of awarding benefits.  42 U.S.C. § 1382c(a)(3)(J).  The ALJ must therefore follow a specific analysis to determine whether the DAA is a contributing factor material to the determination of disability.  *See* 20 C.F.R. § 416.935.  First, the ALJ must complete the five step analysis without separating out the effects of drug or alcohol abuse.  *Bustamante v. Massanari*, 262 F.3d 949, 955 (9th Cir. 2001).  If the ALJ finds the claimant is not disabled, the analysis ends.  If the ALJ finds the claimant disabled with the impact of DAA, the ALJ must perform the sequential evaluation process a second time, separating out the impact of the claimant's DAA, to determine if he would still be disabled if he stopped using drugs or alcohol.  *Id.*  Whether a claimant would still be disabled if he stopped using drugs or alcohol is the "key factor" in the DAA analysis.  Social Security Ruling (SSR) 13-2p.  If after performing this second evaluation, the ALJ determines a claimant's remaining limitations would not be disabling, the ALJ must find the claimant's DAA was a contributing factor material to the determination of disability and find the claimant not disabled.  20 C.F.R. § 416.935(b)(2)(i).  If, however, the ALJ determines a claimant's remaining limitations are still disabling, the ALJ must find the claimant's DAA is not a contributing factor material to the determination of disability and find the claimant disabled. 20 C.F.R. § 416.935(b)(2)(ii).  A

claimant who is found disabled with the effects of substance abuse has the burden in steps one through four of the second sequential evaluation process to prove drug or alcohol abuse is not a contributing factor material to his disability. *Parra v. Astrue*, 481 F.3d 742, 748 (9th Cir. 2007).

In general, the ALJ should give more weight to the opinion of a treating doctor than to that of a non-treating doctor, and more weight to the opinion of an examining doctor than to that of a non-examining doctor. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). Where it is not contradicted by another doctor, the ALJ may reject a treating or examining doctor's opinion only for "clear and convincing reasons." *Id.* at 830-31. Where contradicted, the ALJ may not reject a treating or examining doctor's opinion without "specific and legitimate reasons" that are supported by substantial evidence in the record. *Id.* at 830-31 (quoting *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983)). An ALJ does this by setting out a detailed and thorough summary of the facts and conflicting evidence, stating her interpretation of the facts and evidence, and making findings. *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). The ALJ must do more than offer her conclusions; she must also explain why her interpretation, rather than the treating doctor's interpretation, is correct. *Orn v. Astrue*, 495 F.3d 625, 632 (9th Cir. 2007) (citing *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988)).

### 1.    Dr. Klein

Mr. Reinosky argues that the ALJ did not evaluate which of his mental limitations would remain if he stopped using alcohol, but instead "summarily relied on the testimony of the ALJ's medical expert Ronald M. Klein, Ph.D., who testified that, without DAA, Plaintiff would not be disabled." Dkt. 14 at 6. Mr. Reinosky argues that, because of this error in the DAA analysis, the ALJ failed to apply the correct legal standards to determine the materiality of Mr. Reinosky's DAA. *Id.*

REPORT AND RECOMMENDATION - 5

1    At the April 2011 hearing, Dr. Klein testified that Mr. Reinosky met listing 12.09,

2    substance addiction disorders, until October 2007, but thereafter had no severe impairments

3    without substance use.  Tr. 97-98.  With respect to the paragraph B criteria,[3] Dr. Klein opined

4    that with DAA, Mr. Reinosky had mild restriction of activities of daily living, moderate

5    difficulty maintaining social function, marked difficulty in maintaining concentration,

6    persistence, or pace, and four or more episodes of decompensation, and that he would therefore

7    have a severe impairment that met the listing.  Tr. 97.  Dr. Klein opined that without DAA, Mr.

8    Reinosky would have no restriction of activities of daily living, no difficulty in maintaining

9    social functioning, mild difficulty in maintaining concentration, persistence, or pace, and no

10   episodes of decompensation, and that he would therefore have no severe impairment.[4]  Tr. 97.

11   The ALJ, in finding that Mr. Reinosky's impairments met the listings with DAA

12   included, gave Dr. Klein's opinion great weight, but found the substance abuse to be material

13   throughout the entire period.  Tr. 26.  The ALJ then proceeded to perform the sequential

14   evaluation process a second time, finding first that Mr. Reinosky would continue to have severe

15   impairments even if he stopped the substance abuse.  *Id.*  The ALJ then found that without DAA,

16   Mr. Reinosky would have no restrictions in activities of daily living, moderate difficulties in

17   social functioning, moderate difficulties in concentration, persistence, or pace, and no episodes

18   of decompensation.  Tr. 27.  The ALJ then completed the remainder of the sequential evaluation,

19   finding Mr. Reinosky not disabled without DAA at step five.  Tr. 28-36.

20   [3] To meet or equal the listings at issue here, a claimant who satisfies the diagnostic criteria must
     meet at least two of the following paragraph B criteria: (1) marked restriction of activities of
21   daily living; (2) marked difficulties in maintaining social functioning; (3) marked difficulties in
     maintaining concentration, persistence, or pace; or (4) repeated episodes of decompensation,
22   each of extended duration.  *See* 20 C.F.R. Pt. 404, App. 1, § 12.04, 12.08, 12.09.

23   [4] If a claimant's restrictions in the first three paragraph B criteria are "none" or "mild," and
     "none" in the fourth area, the impairment is generally not severe.  20 C.F.R. § 416.920a(d).

REPORT AND RECOMMENDATION - 6

1   Contrary to Mr. Reinosky's assertion, the ALJ did not adopt Dr. Klein's opinion that Mr.

2   Reinosky would have no severe impairments without substance use.  Even if such reliance would

3   have been error, and Mr. Reinosky does not explain how it would be, that is not what the ALJ

4   did, and the Court finds no error in this aspect of the ALJ's DAA analysis.

5   Mr. Reinosky alleges error in the ALJ's failure to identify "which of Mr. Reinosky's

6   current mental limitations would remain if he stopped using alcohol."  Dkt. 14 at 6.  Although

7   the ALJ did not state which of Mr. Reinosky's impairments would remain medically

8   determinable severe impairments if he stopped his substance use, the ALJ specified that his

9   analysis was "based upon the symptom presentation throughout the record, not on the label of

10  any given mental health diagnosis."  Tr. 26 n.1.  The ALJ noted that it is not uncommon for

11  patients in the psychological realm to be diagnosed with different impairments by different

12  practitioners, with the diagnoses covering nearly all the same symptoms, and found that this was

13  the case with Mr. Reinosky.  *Id.*  The ALJ stated that he considered all of Mr. Reinosky's

14  symptoms, regardless of diagnosis, in formulating the residual functional capacity.  *Id.*  Thus,

15  any error in the ALJ's failure to name the remaining limitations was irrelevant to the ALJ's

16  ultimate decision and was therefore harmless.  *See Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d

17  1050, 1055 (9th Cir. 2006).

18      2.   *Examining doctors*

19  With respect to the examining doctors' opinions the ALJ relied on in finding DAA

20  material, Mr. Reinosky argues that the ALJ erred by finding that Mr. Reinosky was abusing

21  substances at the time he was being evaluated and by concluding that for this reason, the

22  evaluations showed that his impairments did not render him disabled without substance abuse.

23  Dkt. 14 at 7.  Mr. Reinosky asserts that the ALJ ignored the evaluators' determinations that "no

1    current substance abuse was observed at the time of the evaluations." *Id.*

2        a.    *Dr. David Moore*

3        David Moore, Ph.D., examined Mr. Reinosky in October 2006.  Tr. 496-500.  Dr. Moore

4    opined that Mr. Reinosky had moderate to severe limitations in social and cognitive functioning,

5    and assigned a global assessment of functioning (GAF) score of 45, indicating serious symptoms

6    or a serious impairment in social, occupational, or school functioning.  Tr. 498-99; Am.

7    Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders (DSM-IV), 34 (4th ed.

8    text rev. 1994).  Dr. Moore opined that Mr. Reinosky was unable to maintain employment

9    without integrated services.  Tr. 500.

10       When evaluating Mr. Reinosky's impairments with DAA, the ALJ gave this opinion

11   great weight inasmuch as it supported a finding that Mr. Reinosky was disabled with substance

12   use.  Tr. 25.  The ALJ noted that Mr. Reinosky elsewhere reported moderate to heavy use of

13   methamphetamines during the period of the evaluation.  *Id.*  The ALJ found that Dr. Moore's

14   clinical findings, including that Mr. Reinosky presented as anxious and could not maintain focus

15   and his practical thinking derailed under pressure, were consistent with such drug use.  *Id.*

16       Mr. Reinosky argues that the ALJ's reliance on this opinion as support for the materiality

17   of DAA was erroneous, and points out that Dr. Moore found no current substance abuse that

18   affected the symptoms.  Dkt. 14 at 8.  Mr. Reinosky is correct in that Dr. Moore checked the box

19   stating he found no indication of DAA, and noted that Mr. Reinosky "says he has over 1 year

20   abstinence, though not with professional services."  Tr. 498.  Dr. Moore also noted that Mr.

21   Reinosky "acknowledges historical problem" with DAA.  Tr. 499.  But the ALJ relied on Mr.

22   Reinosky's report in December 2007 that he had moderate to heavy use of methamphetamines

23   until May or June of 2007.  Tr. 525.  An ALJ may reject a medical opinion that is inconsistent

1   with other evidence in the record.  *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195

2   (9th Cir. 2004).  Given Mr. Reinosky's own report that he was regularly using

3   methamphetamines at the time of Dr. Moore's evaluation, the ALJ was not required to accept Dr.

4   Moore's opinion that the level of impairment he observed was unrelated to DAA and was, in

5   fact, indicative of the effects of DAA on Mr. Reinosky's level of impairment.

6          *b.      Dr. Ramos*

7          Rufino Ramos, Ph.D., evaluated Mr. Reinosky in February 2007.  Tr. 501-03.  He opined

8   that Mr. Reinosky had difficulty with reasoning ability and sustained concentration, and assigned

9   a GAF score of 50, indicating serious symptoms or a serious impairment in social, occupational,

10  or school functioning.  DSM-IV at 34.

11         When evaluating Mr. Reinosky's impairments with DAA, the ALJ gave this opinion

12  great weight inasmuch as it supported a finding that Mr. Reinosky was disabled with substance

13  use.  Tr. 25.  The ALJ again noted that Mr. Reinosky had reported moderate to heavy

14  methamphetamine use during the period of the evaluation.  *Id.*  The ALJ found that Dr. Ramos

15  thoroughly examined Mr. Reinosky, and that Dr. Ramos's clinical findings, including shallow

16  affect and poor memory and concentration, were consistent with such drug use.  *Id.*

17         Mr. Reinosky argues that Dr. Ramos did not diagnose him with any substance abuse

18  disorder or conclude that substance abuse influenced his symptoms.  Dkt. 14 at 9.  But Dr.

19  Ramos did not conclude that substance abuse did not influence his symptoms; rather, he was

20  unaware of the existence of substance abuse and therefore was unable to evaluate its impact.[5]  As

21  with Dr. Moore's opinion, given Mr. Reinosky's December 2007 report that he was moderately

22

23  _____

[5] Dr. Ramos stated: "[Mr. Reinosky] denied abusing alcohol, illicit or prescription drugs.  This appears to be a questionable issue."  Tr. 501.  Dr. Ramos therefore at best suspected that DAA might be an issue, but did not directly address it.

REPORT AND RECOMMENDATION - 9

1   to heavily using methamphetamine at the time Dr. Ramos evaluated him, the ALJ did not err by

2   considering this evaluation as evidence of Mr. Reinosky's functioning with DAA.

3        c.      *Dr. Widlan*

4        David Widlan, Ph.D., examined Mr. Reinosky in September 2010.  Tr. 629-35.  He

5   opined that Mr. Reinosky had moderate and marked limitations in cognitive functioning and

6   marked limitations in social functioning, and assigned a GAF score of 40, indicating some

7   impairment in reality testing or communication or major impairment in several areas, such as

8   work or school, family relations, judgment, thinking, or mood.  Tr. 633; DSM-IV at 34.

9        The ALJ gave this opinion great weight inasmuch as it supported a finding that Mr.

10  Reinosky was disabled with substance use.  Tr. 26.  The ALJ noted that a few months before this

11  evaluation, Mr. Reinosky underwent emergency care for alcohol intoxication, and reported that

12  he was a heavy drinker and used crack.  *Id.*  The ALJ found that Dr. Widlan thoroughly

13  examined Mr. Reinosky, and that Dr. Widlan's clinical findings, including deficits in social

14  relatedness and poor performance on concentration tasks, were consistent with such substance

15  use.  *Id.*

16       Mr. Reinosky argues that Dr. Widlan specifically concluded that there were no mental

17  health symptoms that were affected by substance abuse or dependence and that treatment would

18  not likely improve Mr. Reinosky's ability to function in a work setting.  Dkt. 14 at 10.  But the

19  ALJ noted that in July 2010, two months before Dr. Widlan's evaluation, Mr. Reinosky was

20  treated in the emergency room for alcohol intoxication; he reported that he was a heavy drinker

21  and used crack.  Tr. 675.  The ALJ is entitled to draw reasonable inferences logically flowing

22  from the record.  *Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008) (citing *Sample v.*

23  *Schweiker*, 694 F.2d 639, 642 (9th Cir.1982)).  Given Mr. Reinosky's admitted substance use at

REPORT AND RECOMMENDATION - 10

the time of the evaluation, the ALJ could rationally conclude that Dr. Widlan's report reflected

Mr. Reinosky's functioning with substance use.  And when the evidence is susceptible to more

than one rational interpretation, it is the Commissioner's conclusion that must be upheld.

*Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).  The ALJ did not err in evaluating this

opinion.

The Court finds no error in the ALJ's DAA analysis.

**B.     Medical opinions**

Mr. Reinosky argues that when determining Mr. Reinosky's residual functional capacity,

the ALJ failed to properly consider and weigh the medical opinions from W. Scott Mabee, Ph.D.

and Shari Lyszkiewicz, M.S., L.M.H.C., Margaret Moore, Ph.D., Majid Azzedine, Ph.D., Dr.

Widlan, and Edward Beaty, Ph.D.  Dkt. 14 at 11-13.

*1.     Dr. Mabee and Ms. Lyszkiewicz*

In December 2007, Shari Lyszkiewicz, M.S., L.M.H.C., evaluated Mr. Reinosky.  Tr.

521-32.  She diagnosed Mr. Reinosky with methamphetamine dependence, early full remission,

alcohol dependence, sustained partial remission, cannabis dependence, sustained partial

remission, adjustment disorder with depressed mood, and personality disorder NOS (antisocial

and schizoid features).  Tr. 522.  She opined that Mr. Reinosky had moderate to marked

limitations in cognitive and social functioning.  Tr. 523.  She assigned a GAF score of 45.  Tr.

531.  W. Scott Mabee, Ph.D., reviewed Ms. Lyszkiewicz's report and believed that it met

professional standards for a psychological evaluation.  Tr. 532.

The ALJ gave Ms. Lyszkiewicz's report little weight because her evaluation did not have

the type of significant clinical findings to substantial the opinion.  Tr. 33.  The ALJ noted that

Ms. Lyszkiewicz found Mr. Reinosky's interpersonal style best characterized as being

1   uncomfortable in social situations, and his results on mental status examination indicated normal

2   cognition.  *Id.*  The ALJ found that it appeared that Ms. Lyszkiewicz relied heavily on Mr.

3   Reinosky's subjective reports of symptoms and limitations, which were not credible.  *Id.*  And

4   the ALJ found the reliability of the assessment questionable as Ms. Lyszkiewicz indicated that

5   Mr. Reinosky's MMPI-2 and PAI were invalid, indicating over reporting of symptoms.  *Id.*

6   Finally, the ALJ found that the opinion did not qualify as a medical opinion from an acceptable

7   medical source.  *Id.*

8          Mr. Reinosky characterizes the report as an evaluation by Dr. Mabee with the assistance

9   of Ms. Lyszkiewicz, and faults the ALJ for considering the fact that the report was "cosigned" by

10  a non-acceptable medical source.  Dkt. 14 at 12.  Mr. Reinosky mischaracterizes the report.  Dr.

11  Mabee did not conduct the evaluation or adopt it as his own.  Rather, he opined that the report

12  met professional standards.  Tr. 532.  The ALJ did not err by evaluating the report as the opinion

13  a non-acceptable medical source.

14         Mental health counselors are not acceptable medical sources who can give medical

15  opinions.  *See* 20 C.F.R. § 416.913(a).  The ALJ may evaluate opinions of other medical sources

16  using the same factors used to evaluate medical opinions of acceptable medical sources.  SSR

17  06-03p; *see also* 20 C.F.R. § 416.927(d).  But the ALJ may give less weight to opinions of non-

18  acceptable medical sources than to those of acceptable medical sources.  SSR 06-03p.  The ALJ

19  must give germane reasons for rejecting opinions from other sources that are not acceptable

20  medical sources.  *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993).

21         The ALJ relied on a lack of clinical findings to support Ms. Lyszkiewicz's opinion.  Tr.

22  33.  Mr. Reinosky asserts that Ms. Lyszkiewicz administered numerous tests that supported her

23  clinical findings and opinions.  Dkt. 14 at 11-12.  The ALJ did not deny that Ms. Lyszkiewicz

REPORT AND RECOMMENDATION - 12

1    administered the tests, but rather found that the test results did not support her opinion, noting

2    clinical findings that were inconsistent with the level of impairment she opined.  Tr. 33.  The

3    ALJ also noted test results that indicated over-reporting of symptoms.  *Id.*  An ALJ may properly

4    reject an opinion that is inconsistent with the record and not supported by objective evidence.

5    *See Meanel v. Apfel*, 172 F.3d 1111, 1113-14 (9th Cir. 1999).  And a claimant's exaggeration of

6    his symptoms is a specific and legitimate reason for rejecting a medical opinion.  *Thomas*, 278

7    F.3d at 958–959 (ALJ may rely on doctor's observation of a claimant's exaggeration of his

8    complaints).  These were both germane reasons to give little weight to Ms. Lyszkiewicz's

9    opinion.  Accordingly, the ALJ did not err in assessing her opinion.

10          *2.    Dr. Margaret Moore*

11          In October 2009, medical expert Margaret Moore, Ph.D., completed a mental medical

12   source statement and testified before the ALJ.  Tr. 618-21.  In her mental medical source

13   statement, Dr. Moore opined that Mr. Reinosky had either no limitations or no significant

14   limitations in understanding and memory or in sustained concentration and persistence.  Tr. 618-

15   19.  She opined that he had either no limitations or no significant limitations in social interaction

16   and adaptation, except that he had mild to moderate limitations in the ability to interact

17   appropriately with the public and moderate limitations in the ability to accept instructions and

18   respond appropriately to criticism from supervisors, to maintain socially appropriate behavior,

19   and to set realistic goals.  Tr. 619-20.  At the hearing, Dr. Moore testified that with respect to the

20   paragraph B criteria of the listings, Mr. Reinosky had no restrictions in activities of daily living,

21   moderate limitations in maintaining social functioning, mild limitations in maintaining

22   concentration, persistence, and pace, and no episodes of decompensation, and that Mr.

23   Reinosky's mental impairments therefore did not meet or equal a listing.  Tr. 120-22.  She

1   testified that she could not tell if substance abuse was at play but that if it was, she did not

2   believe it was material.  Tr. 119.

3          The ALJ gave Dr. Moore's opinion about Mr. Reinosky's functional limitations great

4   weight because she had the benefit of reviewing the record, and because her opinion was

5   consistent with the clinical findings of Ms. Lyszkiewicz and Dr. Azzedine.  Tr. 33-34.  The ALJ

6   gave her opinion that substance abuse was not material little weight because this is a legal

7   conclusion reserved to the Commissioner.  Tr. 34.

8          Mr. Reinosky argues that the ALJ's reliance Dr. Moore's opinion creates an irresolvable

9   inconsistency with the vocational expert's testimony that a person with the limitations Dr. Moore

10  set forth would be unemployable.  Dkt. 14 at 12.  At the January 2013 hearing, Mr. Reinosky's

11  counsel asked the vocational expert whether a person with the moderate limitations Dr. Moore

12  opined in her mental medical source statement would be able to perform any work.  Tr. 75-77.

13  When the ALJ asked counsel to define "moderate," counsel defined it as precluding the activity

14  one-third of the time.  *Id.*  The vocational expert responded that the jobs he had previously

15  discussed did not involve contact with the public, but the rest of the limitations would in all

16  probability preclude the individual on a more probable than not basis from sustaining work.  Tr.

17  77.

18         It is the province of the ALJ, not this Court, to resolve conflicts and ambiguities in the

19  evidence.  *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).  Moreover, "Determining

20  whether inconsistencies are material (or are in fact inconsistencies at all) and whether certain

21  factors are relevant to discount the opinions of [medical providers] falls within [the ALJ's]

22  responsibility."  *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 603 (9th Cir. 1999).

23  Counsel's question to the vocational expert included a definition of "moderate" that counsel

REPORT AND RECOMMENDATION - 14

created at the hearing.  There is no indication that this was the definition Dr. Moore used when

formulating her opinion.  To the extent counsel's question created any inconsistency between Dr.

Moore's opinion and the vocational expert's testimony, this was an inconsistency for the ALJ to

resolve.  The Court finds no error in the ALJ's failure to use counsel's definition of moderate in

evaluating the weight to give to Dr. Moore's opinion, the vocational expert's testimony, or even

Mr. Reinosky's residual functional capacity.

    3.    *Dr. Azzedine*

        Majid Azzedine, Ph.D., completed a complex psychological assessment of Mr. Reinosky

in June 2009.  Tr. 590-602.  Dr. Azzedine opined that Mr. Reinosky was able to remember

simple work-related procedures, he had no intellectual disability or deficit in basic cognitive

functions, and he was able to maintain socially appropriate behavior.  Tr. 601-02.  Dr. Azzedine

assigned a GAF score of 55-60, indicating moderate symptoms or moderate difficulties in social,

occupational, or school functioning.  Tr. 601; DSM-IV at 34.

        The ALJ gave Dr. Azzedine's opinion great weight because the doctor thoroughly

examined Mr. Reinosky and his opinion was consistent with his clinical findings, including that

Mr. Reinosky maintained good eye contact and had mostly a jovial disposition.  Tr. 33.  The ALJ

found, however, that Ms. Lyszkiewicz's clinical findings supported the limitations the ALJ set

forth in the residual functional capacity finding.  *Id.*

        Mr. Reinosky argues that the ALJ improperly "cherry-picked" from Dr. Azzedine's

opinion.  Dkt. 14 at 12.  He points to Dr. Azzedine's statement that "It is unknown how he would

react under the pressure of a normal work environment, or whether he would accept criticism

from supervisors and co-workers without overreacting."  Tr. 602.  It is true that the ALJ may not

cherry-pick statements from a doctor's report, but must instead consider the entire context of the

diagnosis and observations of impairment. *Ganhim v. Colvin*, 763 F.3d 1154, 1164 (9th Cir. 2014). But the ALJ does not err by failing to comment on a single sentence in a thirteen-page report. *See Vincent v. Heckler*, 739 F.2d 1393, 1395 (9th Cir. 1984) (while the ALJ must "make fairly detailed findings in support of administrative decisions to permit courts to review those decisions intelligently," the ALJ "need not discuss all evidence presented"). This sentence was part of the Dr. Azzedine's discussion of Mr. Reinosky's social skills, which also noted that he demonstrated "unremarkable social sophistication," expressed exasperation "in ways that are socially acceptable," and was able to maintain socially appropriate behavior over the course of several hours in the doctor's office. Tr. 602. Any ambiguity in Dr. Azzedine's assessment of Mr. Reinosky's social skills was for the ALJ to resolve. The Court finds no error in the manner in which the ALJ did so.

### 4. Dr. Widlan

Mr. Reinosky argues that the ALJ erred by failing to consider and articulate the weight given to Dr. Widlan's opinion in making the residual functional capacity determination. Dkt. 14 at 13. However, the ALJ found Dr. Widlan's opinion supported a finding that Mr. Reinosky was disabled with substance use. Tr. 26. Accordingly, the ALJ did not err by not considering the opinion when determining Mr. Reinosky's residual functional capacity without substance use.

### 5. Dr. Beaty

In January 2008, state-agency consultant Edward Beaty, Ph.D., opined that Mr. Reinosky could understand and carry out non-complex, one and two step, repetitive tasks, and that he would do best to avoid close interactions with crowds and the general public. Tr. 558-60. The ALJ gave the opinion great weight because Dr. Beaty had the benefit of reviewing the medical evidence, and because it is consistent with the clinical findings of Ms. Lyszkiewicz and Dr.

REPORT AND RECOMMENDATION - 16

1    Azzedine.  Tr. 33.

2          Mr. Reinosky argues that the ALJ erred by giving an inappropriate amount of weight to

3    the opinion of a non-examining doctor.  Dkt. 14 at 13.  But state-agency consultants "are highly

4    qualified physicians and psychologist where are experts in the evaluation of the medical issues in

5    disability claims," and as such, their findings must be treated as expert opinion evidence.  SSR

6    96-6p.  The ALJ can give such opinions weight insofar as they are supported by evidence in the

7    case record, and may, in appropriate circumstances, find such an opinion entitled to greater

8    weight than the opinions of treating or examining sources.  *Id.*  In this case, the ALJ gave Dr.

9    Beaty's opinion great weight, which was the same weight the ALJ gave to the opinions of

10   several examining doctors.  The ALJ gave specific and legitimate reasons for giving Dr. Beaty's

11   opinion great weight.  And the ALJ did not rely on Dr. Beaty's opinion to reject the opinion of a

12   treating or examining doctor.  *See Gallant v. Heckler*, 753 F.2d 1450, 1456 (9th Cir. 1984).  The

13   Court finds no error in the ALJ's decision to give Dr. Beaty's opinion great weight.

14         The Court finds that the ALJ's assessment of the medical opinions in determining Mr.

15   Reinosky's residual functional capacity without DAA was free of legal error and supported by

16   substantial evidence.  Accordingly, the Court finds that the ALJ's decision finding Mr. Reinosky

17   not disabled should be affirmed.

18                                        **CONCLUSION**

19         For the foregoing reasons, the Court recommends that the Commissioner's decision be

20   **AFFIRMED** and this case be **DISMISSED** with prejudice.

21         A proposed order accompanies this Report and Recommendation.  Any objection to this

22   Report and Recommendation must be filed and served no later than **June 9, 2015**.  If no

23   objections are filed, the Clerk shall note the matter as ready for the Court's consideration on that

1   date.  If objections are filed, any response is due within 14 days after being served with the

2   objections.  A party filing an objection must note the matter for the Court's consideration 14

3   days from the date the objection is filed and served.  Objections and responses shall not exceed

4   ten pages.  The failure to timely object may affect the right to appeal.

5          DATED this 26th day of May, 2015.

6

7                                              BRIAN A. TSUCHIDA
                                               United States Magistrate Judge

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

REPORT AND RECOMMENDATION - 18